385 So.2d 471 (1980)
STATE In the Interest of Russell J. GIANGROSSO, Lonnie Ray J. Gros and Scott N. Hood.
No. 13281.
Court of Appeal of Louisiana, First Circuit.
May 5, 1980.
Rehearing Denied July 7, 1980.
*472 Alan J. Robert, Gonzales, Benjamin C. Vega, Jr., Donaldsonville, for the minors Russell J. Giangrosso, Lonnie Ray J. Gros and Scott N. Hood, appellants.
Aubert D. Talbot, Dist. Atty., and Abbott Reeves, Asst. Dist. Atty., Napoleonville, for State of La., appellee.
Before ELLIS, EDWARDS and PONDER, JJ.
ELLIS, Judge:
Russell James Giangrosso, Lonnie Ray Joseph Gros, and Scott Neal Hood are alleged to be delinquent juveniles because they violated the provisions of R.S. 14:42.1, forcible rape, on October 8, 1977. Giangrosso and Gros are charged with two separate offenses. After a full adjudication hearing, all of the juveniles were adjudicated delinquent, and committed to the Department of Corrections, Giangrosso and Gros for "a period not to exceed his twenty-first birthday," and Hood for a period of one year and six months. All three juveniles have appealed to this court.
Defendants have ascribed six specifications of error. First, they allege that the court erred in permitting investigative officers of the State to remain in the courtroom while other witnesses were sequestered. The record reveals that counsel for the defense requested that the investigators for the State be sequestered. The District Attorney stated that he preferred that they remain in the courtroom. The following colloquy then took place:
"BY THE COURT: What is the basis of your objection, Mr. Vega? *473 BY MR. VEGA: Well, I think, like any other witness, they are going to be sitting in here, and I would prefer that they not have the input of any other witnesses prior to their testimony.
BY MR. TALBOT: Your Honor, I would simply say this. These investigators were not present when anything happened. There investigation only took place at a later date. They can neither confirm nor deny of their own knowledge what they saw or heard at the scene or anything that transpired in connection with this hearing. I would strongly urge that the Court keep the investigators present. And, of course, I have no objection, naturally, for the investigators representing the defense to also be present.
BY THE COURT: The Court will exempt the investigative witnesses from the rule. Let's proceed."
Two investigative officers testified as to the voluntary nature of certain statements made by the juveniles. One of them also testified as to some of the content of those statements. The testimony of the latter officer was for the purpose of impeaching the testimony of the three juveniles.
Article 69 of the Code of Juvenile Procedure provides, in part, as follows:
"On its own motion the court may, and on request of a party the court shall, order that the witnesses, other than parties, be excluded from the courtroom or from a place where they can see or hear the proceedings and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order."
It would have been better practice for the judge to place the investigative witnesses under the sequestration order. However, he does have some discretion in the application of the order and no prejudice has been shown by the defendants. If there was error, it was harmless under the circumstances of this case.
The second specification of error relates to the use of a statement given to the police by Brian Theriot, a defense witness, for the purpose of impeaching his testimony. On the night of the alleged offense, Theriot voluntarily gave a statement to the investigating officers. Some of the facts given in that statement were in direct contradiction to his testimony under oath at the trial. It was used by the State on cross examination, without objection by the defense. As a result, Theriot admitted to making a number of statements, which contradicted his testimony on direct examination.
On the following day, the defense asked to be allowed to view the statement. The State offered to introduce it into evidence, but refused to permit the defense to see it otherwise. The Court ruled that the defense was not entitled to see the statement.
In this court, it is urged that the State should have produced the statement on a motion for pre-trial discovery, since it might contain exculpatory evidence; and that the Court should have permitted full review of the statement at trial.
Under Article 59 of the Code of Juvenile Procedure, discovery in delinquency proceedings is regulated by the Code of Criminal Procedure. Under that Code, the State may not be required to produce the statements of witnesses or prospective witnesses on a motion for pre-trial discovery, unless they contain exculpatory material. Articles 718, 723, Code of Criminal Procedure: Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In State v. Linkletter, 345 So.2d 452 (La.1977) the Court said:
"On a number of occasions this Court has made clear that the decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while requiring the prosecution to inform the defendant of exculpatory evidence, does not require the State to open its files to the defendant to search and decide what is exculpatory. (Citations omitted).
"These cases do not construe Brady v. Maryland to permit the defendant unlimited pretrial discovery. No fishing expedition is authorized by that decision and a pretrial in-camera inspection of the *474 State's file is not required. However, the cases do understand Brady v. Maryland to hold, in effect, that the State must, upon request, furnish the defense with evidence which is material to the issues and favorable to the defense. And, if it can be shown that the State, after request, has deliberately withheld from the trial specific evidence favorable to the defense, the error would warrant reversal of the conviction. State v. Tyler, 342 So.2d 574 (La.1977)."
In State v. May, 339 So.2d 764 (La. 1976), the court announced the following principles:
"The high court, in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) held that
`* * * Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.' 96 S.Ct. at 2399."
The record in this case reveals that the defendants had requested, pre-trial, any exculpatory material which the State had, and the State had replied that it had no such material. At the trial, after the statement had been used by the District Attorney in his cross examination of Theriot, the defense asked to view the statement, which had not been used in its entirety, to see if it contained exculpatory material. During the colloquy which followed, the District Attorney stated, on one occasion, that he did not know if the statement contained exculpatory material. Later he appeared to deny that it contained exculpatory material. The defense made no request that the Court examine the statement in camera to see if it contained exculpatory material, although the statement was readily available for such inspection.
Under those circumstances, we do not believe that the defendants have made a sufficient showing that exculpatory material was contained in the Theriot statement, or that it should have been made available by the State pursuant to the pre-trial discovery motion.
At the trial, Brian Theriot admitted having made all the statements which contradicted his testimony given at the trial. The statement was therefore not admissible in evidence at that time. R.S. 15:493. Defendants have cited no law which would permit inspection of a statement of the trial which they could not have discovered pre-trial, other than a decision of this court in a civil case. We believe that inspection is an aspect of discovery, and therefore governed by the provisions of the Code of Criminal Procedure. We, therefore, find no error in the ruling of the trial judge.
The third specification of error relates to the alleged refusal of the court to permit the defense to make a proffer of evidence. The record shows that the State objected to a question asked by the defense, and the Court sustained the objection. Counsel for defense objected to the ruling and stated that he wanted to put his reasons for the objection in the record as a note of evidence. The State pointed out that his reasons could be included in a brief on appeal. The Court did not permit counsel for defense to make the proffer.
This ruling is, of course, correct. A proffer is used to set forth the nature of evidence, and not to preserve the reasons for an objection. Article 24, Code of Juvenile Procedure; Article 1636, Code of Civil Procedure.
Fourth, it is claimed that defense counsel, who represented different defendants, were unduly restricted in cross examination. The record shows that after counsel for Giangrosso and Gros had completed his cross examination of the first witness for the State, the District Attorney asked the Court not to permit counsel for Hood to *475 ask the same questions on cross examination that had been asked by counsel for the other defendants. The Court ruled that, since the rules of civil procedure apply in a juvenile proceeding, he would not permit repetition of anything already covered. Thereafter, the Court sustained objections on five occasions to questions which were repetitious of questions asked by other counsel. The Court noted at one point that none of the evidence given by this witness tended to incriminate Scott Hood, client of the second counsel. The problem did not arise in connection with any of the other witnesses.
We find no error. Although cross examination was somewhat restricted, it was only in areas already covered by counsel for the other defendants, and as to matters which did not bear on the guilt or innocence of Scott Hood, who was the client of the attorney so restricted. Articles 19 and 74 of the Code of Juvenile Procedure require that juvenile proceedings be conducted in an orderly and expeditious manner. The trial judge has the duty of so conducting the proceedings. This includes, necessarily, the right to restrict unduly long or repetitious examination of witnesses by any counsel. His discretion in this respect was not abused herein.
Fifth, the defense contends that the State was improperly permitted to use oral statements made by the defendants, which had been suppressed by stipulation of the District Attorney, to impeach their testimony at the trial. The record shows that each of the boys made a statement on the night of the alleged rapes. These statements were given out of the presence of their parents and without the assistance of counsel, and were therefore clearly inadmissible as oral confessions. State in Interest of Dino, 359 So.2d 586 (La.1978).
Scott Hood testified that Jeff Wiley, the juvenile officer who questioned him, grabbed him around the neck and threatened him with physical violence if he did not tell the truth. Lonnie Gros stated that he looked through a glass set in the door of the interrogation room and saw Wiley with his hand on Scott's throat, holding him against the wall. Mrs. J. T. Hood, Scott's mother, testified that Scott showed her a red mark. She did not state where the mark was. She also stated that Scott told her the mark was made by a "man across the river," and not by an employee of the sheriff's office. No testimony was adduced that indicated that there was any improper conduct in taking the statements of Giangrosso or Gros.
Officer Wiley testified that no threats, force, or violence were used on Hood or any of the boys; that they were fully advised of their constitutional rights and appeared to understand them; and that their statements were freely and voluntarily given.
The trial judge ruled that the statements were freely and voluntarily given and could be used to impeach the testimony given by the defendants on direct examination. After reviewing the record thoroughly, we find that the conclusion of the trial judge, which is entitled to great weight, is not manifestly erroneous.
Under the circumstances, the statements so made by the defendants may be used to impeach their testimony, even though not admissible as evidence of guilt. State v. Kent, 371 So.2d 1319 (La.1979).
Finally, it is urged that the record as a whole does not support a finding that the defendants are guilty beyond a reasonable doubt of the crime of forcible rape.
The two alleged victims of the crime were Robin and Windy Kelleher, who were aged 14 and 15 years at the time of the alleged crime. Robin testified that she was forced into a van belonging to Lonnie Gros by Giangrosso and Gros who held her down and started to undress her. Gros then got out of the van and Giangrosso locked it. She testified that, despite her resistance, she was raped by him, and that she was screaming throughout.
Gros denied being in the van. Giangrosso testified that Robin consented, after he told her that he would not go out with her if she did not "give him some." All three of the defendants testified that there was no *476 screaming coming from the van while Giangrosso and Robin were inside together, and that Robin was apparently calm when she got out of the van. Windy and Debbie McGuirk, who were also present, testified that there was screaming coming from the van, and that Robin was crying when she got out.
After the incident in the van, the girls asked Giangrosso to take them home and he refused. They then asked Gros, and he refused. The girls started to leave, and the second incident occurred. According to Windy, as she and the girls were walking away, the boys came after them and grabbed Windy. She was thrown to the ground and undressed, and then the three boys took turns raping her. She testified that she was fighting and screaming, that she was hit, threatened and forced to say things and that they put sand in her mouth.
The two other girls testified that as they were leaving, the boys chased them and caught Windy. They continued to run away. Debbie McGuirk stated that she saw Windy knocked to the ground.
The boys all testified that as the girls were leaving they were told that they could have a ride home if they would "give (the boys) some." Two of the girls refused, but Windy said, "It might as well be me." She voluntarily disrobed and permitted each of them to have intercourse with her. In the meanwhile, Robin and Debbie had summoned the police.
The only other witness to the incidents was Brian Theriot. Brian's testimony on direct supported that of the defendants. However, on cross examination, he admitted to having made the statements to interrogating officers on the night of the incidents which supported the testimony of the girls, including statements which indicated that he thought the girls were being forced, and that when Giangrosso and Robin were in the van together that it sounded like rape to him.
Article 73 of the Code of Juvenile Procedure provides, in part:
"If the petition requests that the child be adjudicated a delinquent, the state shall prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition."
In juvenile proceedings, the scope of review of this court extends to both law and fact. Article 5, Section 10, Constitution of 1974; see State in Interest of Batiste, 367 So.2d 784 (La.1979). We must, therefore, decide if the trial judge was clearly wrong in his determination that the defendants were proven guilty beyond a reasonable doubt.
In reaching his conclusion, the trial judge had to believe the testimony of the three girls, and reject that of the defendants. This, of course, is a determination, based on credibility, which the trial judge is in a better position to make than we. However, we further note that there is ample evidence from which one can conclude that much of the testimony given by the defendants at the trial was impeached by their own statements given on the night of the incident.
After carefully considering the entire record, we conclude that we cannot say that the trial judge was manifestly erroneous or clearly wrong in his finding that the defendants were guilty as charged beyond a reasonable doubt.
The judgments appealed from are therefore affirmed.
AFFIRMED.