HIGGINBOTHAM, J.
The juvenile, D.L.P., was charged by juvenile petition with armed robbery, a violation of La. R.S. 14:64 (count 2); and simple battery, a violation of La. R.S. 14:35 (count 3).[1] She denied the allegations and, following an adjudication hearing, was adjudicated a delinquent for the charged offenses. For count 2, the judge ordered the juvenile to be committed to the custody of the Department of Public Safety and Corrections for two years without benefit of parole, probation, or suspension of sentence; for count 3, the judge ordered the juvenile to be committed to the custody of the Department of Public Safety and Corrections for six months. The judge ordered the terms of commitment to run concurrently. D.L.P. now appeals, designating one assignment of error.
FACTS
On December 9, 2016, M.W.[2] got off his school bus and walked to his home on Wright Drive in Baton Rouge. He did not have his house keys, so he called his mother, then sat under his carport and waited. Two people, whom M.W. had never seen, approached M.W., whom M.W. later identified as North Banks Middle School students D.C. and D.L.P. D.C. asked to use M.W.'s cell phone. M.W. said he would not give D.C. his phone but he would make the *947 call for him (D.C.). Twice, D.C. gave numbers to M.W., which he called but no one answered. After a few more words were exchanged, D.C. pulled a gun and told M.W. to give him his phone. When M.W. refused, D.L.P. attacked him. D.L.P. hit M.W. on the head, knocking him to the ground. D.L.P. then grabbed the phone from M.W.'s hand, and D.C. and D.L.P. ran off. Later that same day, M.W. identified the two people that robbed him by viewing pictures of them on their Instagram accounts.
D.L.P. did not testify.
ASSIGNMENT OF ERROR
In her sole assignment of error, D.L.P. argues there was insufficient evidence to adjudicate her delinquent for the offenses of armed robbery and simple battery. Specifically, D.L.P. contends the State failed to prove her identity as one of the perpetrators.
In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch. Code art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. State in Interest of S.T. , 95-2187 (La. App. 1st Cir. 6/28/96), 677 So.2d 1071, 1074.
In State in Interest of Giangrosso , 385 So.2d 471, 476 (La. App. 1st Cir. 1980), affirmed, 395 So.2d 709 (La. 1981), we stated:
In juvenile proceedings, the scope of review of this court extends to both law and fact. Article 5, Section 10, Constitution of 1974; see State in Interest of Batiste , 367 So.2d 784 (La. 1979). We must, therefore, decide if the trial judge was clearly wrong in his determination that the defendants were proven guilty beyond a reasonable doubt.
Thereafter, in State in Interest of Giangrosso , 395 So.2d 709, 714 (La. 1981), the supreme court affirmed this court, concluding that a rational trier of fact could have found, from the evidence adduced at the trial, proof of guilt beyond a reasonable doubt, citing Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and State in Interest of Batiste , 367 So.2d 784 (La. 1979). See In Interest of L.C. , 96-2511 (La. App. 1st Cir. 6/20/97), 696 So.2d 668, 669-70.
Accordingly, on appeal the standard of review for the sufficiency of evidence, enunciated in Jackson v. Virginia , i.e., viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt, is applicable to delinquency cases. See La. Code Crim. P. art. 821.[3] Where the issue is the defendant's identity as the perpetrator, the State is required to negate any reasonable probability of misidentification. See State v. Jones , 94-1098 (La. App. 1st Cir. 6/23/95), 658 So.2d 307, 311, writ denied, 95-2280 (La. 1/12/96), 666 So.2d 320. Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Andrews , 94-0842 (La. App. 1st Cir. 5/5/95), 655 So.2d 448, 453. Further, because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the trial court was clearly wrong in its factual findings. See *948 State in Interest of D.M. , 97-0628 (La. App. 1st Cir. 11/7/97), 704 So.2d 786, 789-90.
D.L.P. argues in brief that the State failed to prove her identity as one of the perpetrators of the armed robbery and her identity as the perpetrator, in particular, of the simple battery. According to D.L.P., M.W.'s identification of her was not based on his observations at the time of the armed robbery and battery, but rather on information he obtained through social media after the crimes. D.L.P. further points out that M.W. thought it was two males who had robbed him; when M.W. saw a posting on Instagram, however, he "changed his mind" about the identification of one of the perpetrators. D.L.P. suggests that M.W.'s identification at the adjudication hearing was based on the Instagram posting rather than on his memory and observations at the time of the robbery.
D.L.P.'s assertions notwithstanding, M.W.'s identification of her as one of the perpetrators was, indeed, based on his observations of her at the time of the robbery. It is true that M.W. told the first deputy at the scene that two black males had robbed him; it is also true that M.W. had never before seen the two people that robbed him. These two observations, however, do not change the fact that M.W. got what appeared to be a very good view of D.L.P. as she robbed and hit him.
Moments before the armed robbery, the juvenile and/or D.C. (co-defendant) told M.W. that J.M. (whom M.W. had known) had just stepped into M.W.'s house to retrieve something that he (J.M.) had left there yesterday. M.W. said that this was not true. The juvenile and D.C. then turned away and whispered to each other. When they turned back toward M.W., D.C. pulled a gun from his jacket, pointed the gun at M.W.'s chest, and told him to give them his phone. When M.W. refused to give them his phone, the juvenile attacked M.W. and tried to get his phone. M.W. pushed the juvenile off of him. The juvenile then told D.C., "Shoot him, shoot him." The juvenile again attacked M.W. She hit M.W. on the back of the head, knocking him to the ground. The juvenile took M.W.'s phone from his hand, and the two perpetrators ran off.
Detective Steven Gallo, with the East Baton Rouge Sheriff's Office, was assigned M.W.'s case. Based on initial information and the report of the deputy (who had arrived at M. W.'s home shortly after the robbery), Detective Gallo thought he was looking for two males. After M.W. and his family, however, began investigating on their own, M.W. realized the juvenile was a female.
M.W. also knew J.M. (whom M.W. had gone to school with), the person mentioned just prior to the robbery as having gone inside M.W.'s home. Very shortly after being robbed, M.W. called J.M., who appeared to identify the perpetrators. Because of hearsay issues, M.W. was not permitted to testify as to what J.M. told him. M.W.'s father called J.M.'s mother, who in turn spoke to her son about the robbery. According to M.W.'s father, who testified at the adjudication hearing, J.M. provided "all the information, their names, their social media, and everything."
Based on what J.M. had told M.W., M.W. pulled up the juvenile's Instagram account. This was only a couple of hours after the robbery. When he saw a picture of the juvenile on that account, M.W. recognized her as one of the people who had robbed him; and he recognized the juvenile, particularly, as the one who had attacked and struck him, and taken his phone. M.W. then identified the juvenile at the adjudication hearing as the person he saw on the Instagram account and as the person who robbed him.
*949 During the robbery, D.C. was wearing a North Banks Middle School (North Banks) jacket. M.W. mentioned someone he knew at that school, and D.C. responded that he knew that person and that they had a class together. When Detective Gallo showed M.W. pictures of all the male students at North Banks, M.W. told the detective that D.C. looked like the person who robbed him. The juvenile also attended North Banks. M.W. also looked at D.C.'s Instagram account, where he saw a picture of D.C. and the juvenile together.
While M.W. got a clear look at the juvenile's face during the robbery, he saw only part of D.C.'s face because he had his jacket hood on, and the hood was cinched around his face via the drawstring. M.W. testified at the adjudication hearing on direct examination that, while the juvenile also had a hood on, the hood was not tied up; as such, he "could see her full face." Later, on cross-examination, M.W. testified that during the robbery, the juvenile's "face was fully shown." Detective Gallo testified that he made initial contact with the juvenile at her school and that, in his opinion, it appeared the juvenile could be mistaken for a male.
On the same day the phone was stolen, M.W.'s mother used a "Find My Phone" app on her own iPhone to see if they could track the location of M.W.'s phone. At about 6:30 that same night, the app indicated that M.W.'s phone was at the home address of the juvenile. M.W.'s phone was never found.
For all of the foregoing reasons, it is clear the State proved that D.L.P. was a principal to the robbery of M.W. and, further, D.L.P. was the person who attacked M.W. and took his phone. The trier of fact, in this case, the juvenile court, is charged with making credibility determinations. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State ex rel. T.C. , 2009-1669 (La. App. 4th Cir. 2/16/11), 60 So.3d 1260, 1263. Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. Id.See Tibbs v. Florida , 457 U.S. 31, 46, 102 S.Ct. 2211, 2220-21, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. T.C. , 60 So.3d at 1263. A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. Id.See State v. Vessell , 450 So.2d 938, 943 (La. 1984). In the absence of internal contradictions and irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trial court, is sufficient to support a conviction. State ex rel. D.J. , 2000-1592 (La. App. 5th Cir. 3/28/01), 783 So.2d 558, 562.
In adjudicating D.L.P. delinquent, the judge, as the rational trier of fact, clearly accepted the testimony of the State's witnesses and found that the essential elements of armed robbery and simple battery were proven beyond a reasonable doubt, and that it was proven beyond a reasonable doubt that D.L.P. was a principal to both of those offenses. After a thorough review of the record, we find the evidence supports the judge's adjudications. Additionally, after undertaking the mandated review of the law and facts in a juvenile proceeding, we cannot conclude that the judge's findings were manifestly erroneous or clearly wrong in its adjudications of delinquency based on the commission of armed robbery and simple battery.
The assignment of error is without merit.
*950 ADJUDICATIONS AND DISPOSITIONS AFFIRMED.

Count 1 was armed robbery of a different victim. When that victim did not show up at the adjudication hearing, the State dismissed that count. The court nevertheless referred to the remaining counts as counts 2 and 3, respectively.

The victim is referred to by his initials. See La. R.S. 46:1844(W).

In the absence of specific procedures provided by the Louisiana Children's Code, the court shall proceed in accordance with the Louisiana Code of Criminal Procedure. See La. Ch. Code art. 803.