# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 18-239

**STATE IN THE INTEREST OF**

**D.J.S.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 27944
HONORABLE W. MITCHELL REDD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, John E. Conery, and Van H. Kyzar, Judges.

**AFFIRMED.**

Annette Fuller Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:
    D.J.S.

John F. DeRosier
District Attorney
Elizabeth B. Hollins
Cynthia Guillory
Assistant District Attorneys
Fourteenth Judicial District
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
COUNSEL FOR APPELLEE:
    State of Louisiana

**KYZAR, Judge.**

The minor, D.J.S.,[1] appeals from his adjudication as delinquent after having been found to have committed the offense of telephone harassment, in violation of La.R.S.14:285(A)(2). For the reasons set forth herein, we affirm.

## DISCUSSION OF THE RECORD

On August 17, 2015, the State of Louisiana filed a petition seeking to have the juvenile, D.J.S., ten years of age at the time, declared a delinquent for having committed the offense of telephone harassment, by making obscene or threatening phone calls to the principal of the school he attended, prior to his expulsion based on other behavior. The petition specifically alleged that D.J.S.:

> [V]iolated Louisiana Revised Statute 14:285.A.(1) (Telephone Harassment) in that, on or about July 9, 2015, he did engage in or institute at least eight (8) telephone calls to Joy Fox, W/F, age 52, principal of R.W Vincent Elementary School, 1634 Beglis Parkway, Sulphur, Calcasieu Parish, Louisiana, by using profane language in attempt to coerce, intimidate, or harass the victim, without the victim's consent.

Through his attorney, D.J.S. entered a denial of the charge, and a hearing on the petition was originally set for September 18, 2015. The hearing was continued and reset on multiple occasions primarily because of the non-appearance of D.J.S. and his parent, but also on three occasions on motion of the state. An adjudication hearing was finally held on May 26, 2017.

During the adjudication hearing, Ms. Fox testified that D.J.S. attended her school for two years. She stated that she received a telephone call on May 15, 2015, at 10:04 a.m., during which the caller asked, "When is the talent show?" Ms. Fox testified that she recognized the voice as that of D.J.S., and when she looked at the number on the caller ID, she recognized the number as that of his mother, Stacy

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rule 5-2, the initials of the juvenile are used to protect his identity.

Bigalow. Ms. Fox said that after she responded that they were not having a talent show, she asked that the caller identify himself. She stated that the caller's response was, "This is your death threat, bitch." Ms. Fox hung up the phone and contacted the school system's risk management office, who in turn contacted the Calcasieu Parish Sheriff's Office.

Ms. Fox testified that she recognized D.J.S.'s voice because she had dealt with him several times a week for an extended period of time, either for disciplinary issues and in general conversation, and she recognized the phone number due to her extensive contact with D.J.S.'s mother. She stated that the caller's phone number matched the phone number of D.J.S.'s mother on the school's emergency contact card. The card listed D.J.S.'s home number as 274-7823.[2] Ms. Fox testified that the other phone numbers listed on the card were 707-4830 (D.J.S.'s aunt), 377-7804 (Evette Sibley), and 707-2081 (Karen Thomas).

According to Ms. Fox, D.J.S. had visited her office fourteen times, and she had visited with him on other occasions outside the school office as well. She testified that from October 8, 2014 through January 26, 2015, D.J.S. went to her office every morning and afternoon and visited with either her or the assistant principal. She said that these visits were started in an effort to curtail the problems that the school was having with D.J.S.[3] When he was in the office for these visits, Ms. Fox testified that she spoke with him individually with no other students present. She stated that after these visits ended in January 2015 (at his mother's request), D.J.S. visited the office nine more times, ending on April 16, 2015, which

---

[2]At another point in her testimony, Ms. Fox testified that the emergency contact card filled out by D.J.S.'s mother listed her phone number as 274-7828; however, a review of the emergency contact card in evidence revealed that the number listed on the card is in fact 274-7823.

[3] Ms. Fox testified that the problems with D.J.S. included bus disturbances, class disturbances, habitual violation of rules, open defiance, disrespect, campus disturbances, profanity, harassment of students, and willful disobedience.

was his last day to attend the school prior to his suspension pending a hearing. She stated that there was no doubt in her mind that the call she received was from D.J.S., although she admitted that she had not previously heard his voice over the phone. She said that she recognized his voice and knew the number. She stated that the last time she had contact with D.J.S., prior to the call, was at a hearing held on May 4, 2015, and the last time he was present at school was April 16, 2015, as he did not complete the school year.

Corporal Patrick Bordelon, of the Calcasieu Parish Sheriff's Office, responded to the school that same day. Ms. Fox testified that she informed Corporal Bordelon that she recognized the phone number as D.J.S.'s mother's cell phone number, and she provided him D.J.S.'s emergency contact information. She said that she did not provide him with the other phone numbers on the card. Ms. Fox testified that the only phone number used by the school was (337) 217-4690.

Corporal Bordelon testified that after he arrived at the school the principal advised him that she had been receiving harassing phone calls, and she believed they were being made by a student who was recently expelled. She told Corporal Bordelon that she recognized D.J.S.'s voice. As Corporal Bordelon was taking down information, he stated that the phone rang. He said that Ms. Fox looked down, recognized the number, and said, "That's him, again." Corporal Bordelon testified that he answered the phone, announced who he was, and asked for the name of the caller. He stated that there was silence on the other end and then the caller hung up. Corporal Bordelon recalled that "they" called back two or three more times.[4] Before he answered the phone, he stated that he wrote down the

---

[4]Ms. Fox testified that the call she took came into the school at 10:04. Subsequent calls came in at 10:24, 10:25, 10:27, 10:28 (all hang up calls), and 10:33 (a wrong number call) and were answered by Corporal Bordelon.

phone number to include in his report. Corporal Bordelon testified that Ms. Fox told him who was calling, so he got the school's emergency contact card and wrote down the juvenile's name, date of birth, and contact information. He said that he noticed that the phone number he wrote down for one of the calls was listed on D.J.S.'s emergency contact card.[5]

Corporal Bordelon identified the numbers on the emergency contact card as 274-7832,[6] 707-4830, 377-7804, and 707-2081. When shown his offense report, he stated that the numbers listed in his report were 244-3622 and 563-6530 and that these numbers were either from the caller ID and/or D.J.S.'s emergency contact card. When shown the emergency contact card in court, Corporal Bordelon acknowledged that the two numbers in his report differed from those on the card, and he affirmed that possibly six numbers were associated with this offense.

Laura Phenice, the assistant principal at R.W. Vincent Elementary School, testified that her contact with D.J.S. was mostly for disciplinary reasons, which she summarized during her testimony. She said that during the time that D.J.S. was checking in with her on a daily basis, he also came into contact with Ms. Fox because their offices were directly across the hall from each other. Ms. Phenice testified that after the daily check-ins stopped at the request of D.J.S.'s mother, his behavior continued to escalate, so both she and Ms. Fox "put him up for expulsion."

---

[5] On cross-examination, Corporal Bordelon testified that he thought "that [he] was gathering information and talking to her [Ms. Fox], then the phone rang, then [he] wrote it - - when she said, 'That's them,' [he] wrote it down and afterwards got the contact information from the phone." He testified that the number he noticed on the caller ID matched the number on the emergency contact card.

[6] On redirect examination, Corporal Bordelon correctly identified the first number as 274-7823.

4

Dewanis Kim Broussard, a hearing officer and a supervisor with the child welfare and attendance office for the Calcasieu Parish School Board, testified that she received a request for the expulsion of D.J.S. from R.W. Vincent Elementary School on April 17, 2015. She stated that although an expulsion hearing was held, she was forced to end the hearing due to the behavior of D.J.S.'s mother. She said that the matter was turned over to another hearing officer, who held a second hearing on May 4, 2015. Ms. Broussard testified that the second hearing officer noted that Ms. Bigalow was extremely rude and disrespectful, that she accused Ms. Fox and Ms. Phenice of mishandling D.J.S., and that she called Ms. Phenice an "F-B." Ms. Broussard testified that following this hearing, a decision was made to place D.J.S. in an alternative school starting May 5, 2015.

Deanna Conn, a juvenile investigator with the Public Defender's Office, testified that she subpoenaed the May 15, 2015 records for the phone numbers listed in the offense report, 244-3622 and 563-6530, and also for 274-7823, Ms. Bigalow's number.[7] Introduced into evidence were the records received from AT&T, the carrier for phone numbers (337) 274-7823 and (337) 244-3622.[8] Attached to the records was a verification of authenticity by a custodian of records for AT&T. Ms. Conn learned that (337) 244-3622 was registered to Mary Chapman, and she was not able to determine Ms. Chapman's relationship to this matter. She testified that she later learned that this phone number was "related to" Ms. Bigalow's sister, Brandy Wilkens, who Ms. Conn stated had nothing to do

---

[7]Ms. Conn testified that all phone numbers involved have the area code (337).

[8]The prosecutor stipulated that certified copies of the phone records were received, but did not stipulate as to their truth or veracity. Later, when the time converter was introduced into evidence, the prosecutor objected to the truth of the records because they were not reflected in Central Standard Time. Her concern was that if the conversion was not being done properly, then there was no way to know if the documents were "true and correct." The trial court allowed the exhibit, noting there were valid concerns, but said it would consider the records and give them the weight to which they were entitled.

with this matter. Ms. Conn testified that she inspected the voice usage phone log for (337) 244-3622 and contacted AT&T to determine how to interpret the records, as she was unable to interpret many of the coding items on the records herself. She testified that she was informed by an unnamed AT&T representative that voice usage was reflected as an originating number (the person sending the call) and a terminating number (the person receiving the call.) Ms. Conn stated that her inspection of the phone log revealed that there were no phone calls on May 15, 2015, from (337) 244-3622 to the school number, (337) 217-4690.

Ms. Conn testified that the first entry in the phone log was at 11:52, which was in Universal Time (UTC),[9] the time the provider AT&T gave in the records. This had to be translated to Central Time (CT), the applicable time zone in this case. Again, Ms. Conn stated that the unnamed AT&T employee informed her that she should use a website, timetemp.com, to convert the time from UTC to CT. She explained that she did this by typing in the date of the offense and using the time converter button, which showed the list of times for the entire day. She stated that the first phone call that the records picked up for that day was at 11:52, which was 6:52 a.m. CT, and there were no calls on May 15, 2015, from (337) 244-3622 to the school number. Ms. Conn testified that (337) 244-3622 was active with AT&T on May 15, 2015, and according to her, it could not be active with another cell phone provider at the same time.

Ms. Conn testified she also reviewed the subscriber information from AT&T for (337) 274-7823 and learned that the phone was active on May 15, 2015 and was registered to Ms. Bigalow. Using the time converter, she learned that the first phone call shown on the records from Ms. Bigalow's phone was made at 5:53 UTC,

---

[9] UTC stands for Universal Time Coordinated, which prior to 1972, was referred to as Greenwich Mean Time (GMT). National Hurricane Center, National Oceanic and Atmospheric Administration, https://www.nhc.noaa.gov/aboututc.shtml (last visited September 11, 2018).

which was 12:53 a.m. CT, but there was no log of any calls made to the school number.

Ms. Conn testified she also subpoenaed records from Sprint. She said that she learned that (337) 563-6530 was registered to Devon Martin, but she was not able to identify his relationship to this matter. She also inspected the phone log for (337) 563-6530 and learned that "[t]hat number was not active at that time of May 15, 2015."

Ms. Conn testified that her review of the records showed that none of the numbers she subpoenaed records for showed calls made to the school. She reiterated that (337) 244-3622 came from the offense report, and it was her understanding that it was one of the numbers that showed up on the caller ID. She testified she got (337) 274-7823 from the offense report "from the school information sheet." Ms. Conn testified that the provider records were certified as being authentic, and she had no reason to think that they were not valid.

Ms. Conn testified that according to her investigation, only one provider could provide service for a phone number at any given time. The prosecutor showed Ms. Conn a print-out from the internet showing that 274-7823 listed Sprint Spectrum as the provider. The print-out showed that the phone number was *assigned* on June 28, 2001, but it did not specifically show who the carrier was on May 15, 2015. The AT&T records showed that AT&T was providing service for this number on May 15, 2015.

Ms. Conn explained on cross-examination that records from May 14, 2015 were not given by the phone companies, but they did include records from May 16, 2015, though she did not request any records from that day.

At the conclusion of the hearing, the trial court found D.J.S. to be delinquent after finding the evidence sufficient to prove that he did commit the delinquent

7

offense. The trial court, thereafter, ordered a disposition of one year supervised probation, with special conditions. A written judgment of disposition was rendered by the trial court on June 20, 2017.

On June 27, 2017, a motion for a new trial was filed on behalf of D.J.S., asserting that the judgment adjudicating him as a delinquent was contrary to the law and evidence. The motion was denied on January 3, 2018. Following the denial of the motion for a new trial, D.J.S. moved to appeal his adjudication as a delinquent, asserting one assignment or error being the sufficiency of the evidence to support the adjudication.

## ERRORS PATENT

Although the Louisiana Children's Code is silent as to whether a patent error review is required in a juvenile criminal proceeding, this court has found that such a review is mandated by La.Ch.Code art. 104, providing that the Louisiana Code of Criminal Procedure applies in matters not otherwise provided for in the Children's Code, together with La.Code Crim.P. art. 920, providing for errors patent reviews in criminal matters. *See State in the Interest of J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. After reviewing the record, we find one potential error patent requiring discussion but not reversal.

The record reflects that D.J.S. did not appear to answer the allegations of the petition within fifteen days as required by La.Ch.Code art. 854, and the adjudication hearing was not held within ninety days as required by La.Ch.Code art. 877; however, there is no indication in the record that D.J.S. objected to the untimely hearings and the record reflects that many of the delays were caused by D.J.S. himself.

In *State in the Interest of D.B.*, 14-85, pp. 2-4 (La.App. 3 Cir. 5/7/14), 141 So.3d 296, 298-99 (alteration in original), addressing the untimeliness of an answer

8

hearing, this court found that the following supreme court jurisprudence suggests that a juvenile's failure to object to the setting of a hearing outside the required time limit is to be considered an extension of the time period for good cause:

> The supreme court has rendered a series of rulings holding that a juvenile's failure to object to the untimely setting of a hearing constitutes a good cause extension of the time period. In the most recent case, *State in the Interest of D.J.*, 13-1111, p. 1 (La.1/10/14), 131 So.3d 35, 36, the supreme court reversed the fourth circuit's decision dismissing a petition filed against a juvenile. In its opinion, *State in the Interest of D.J.*, 12-1416, p. 6 (La.App. 4 Cir. 4/10/13), 113 So.3d 503, 507, the fourth circuit rejected the State's argument that D.J. waived his right to a timely adjudication by failing to object to the adjudication date when it was initially set. Reversing the fourth circuit and reinstating the petition against D.J., the supreme court stated the following:
>
>> Here, through administrative error arising from the movement of the case from one section of the juvenile court to another, the adjudication hearing was set five days after the expiration of the 30-day time limit without objection by the child. Before the expiration of the time limit, the state recognized the error and requested an extension to maintain the hearing date apparently agreed upon by all parties. The juvenile court found that good cause existed and granted the state's request. The court accordingly denied the child's motion to dismiss on the date set for the hearing, and thereafter adjudicated the juvenile delinquent. The court of appeal, relying on *State in the Interest of W.P.*, 11-1442 (La.App. 4 Cir. 3/7/12), 82 So.3d 571 (unpub'd), found that the juvenile court abused its discretion in denying the motion to dismiss because the child's acquiescence in the setting of an untimely hearing date did not waive his right to strict compliance with La.Ch.C. art. 877(A). The court of appeal therefore reversed the juvenile court's ruling, effectively vacating the lower court's adjudication of the juvenile as delinquent and its disposition of the case. *State in the Interest of D.J.*, 12-1416, pp. 5-6 (La.App. 4 Cir. 4/10/13), 113 So.3d 503, 507. The court of appeal erred in this determination. *See State in the Interest of W.P.*, 12-0794 (La.9/28/12), 98 So.3d 802 (remanding for reconsideration). Under the facts of the matter presented, the juvenile court did not abuse its discretion in denying the motion to dismiss. *See State in the Interest of R.D.C.*, 93-1865, p. 3 n. 4 (La.2/28/94), 632 So.2d 745, 747 ("The hearing, originally set for June 30, 1992, was continued by the court until August 4, 1992, a date outside of the ninety day period [provided by La.Ch.C.

9

art. 877(B) for adjudication hearings when the child is not continued in custody]. However, since the court, the child and the state agreed to this August 4, 1992 date, we will treat it as an extension for good cause by the court.").

The decision of the court of appeal is therefore reversed, and the juvenile court's adjudication of delinquency and disposition of the case are hereby reinstated.

*D.J.*, 131 So.3d at 35-36.

We find that D.B.'s failure to object to the trial court's setting of an answer hearing outside of the time limits is to be considered an extension of the time period for good cause. *See also State in the Interest of W.P.*, 12-794 (La.9/28/12), 98 So.3d 802, *State in the Interest of J.S.*, 11-2673 (La.4/20/12), 85 So.3d 1277, and *State in the Interest of R.D.C., Jr.*, 93-1865, p. 3 (La.2/28/94), 632 So.2d 745.

Louisiana Children's Code Article 854 allows for the time period to be extended for good cause. Having found that D.B.'s failure to object to the untimely setting of the answer hearing constituted a good cause extension of the time period, article 854 has been complied with.

In accordance with *D.B.*, we find that the D.J.S.'s actions and failure to object constituted a good cause extension of the time periods, and no reversible error occurred.

## OPINION

On appeal, D.J.S. assigns as error that "[t]he evidence introduced at the adjudication hearing, when reviewed under the standard of review applicable in juvenile delinquency proceedings, was insufficient to prove beyond a reasonable doubt that D.J.S. committed the crime of telephone harassment." Counsel for D.J.S. has raised different claims within this assignment, which will be discussed separately.

### *Wrong Subsection of La.R.S. 14:285*

Within the general allegation that the evidence was insufficient to support the trial court's decision finding that D.J.S. committed a delinquent act of

10

telephone harassment, appellate counsel for D.J.S. argues that the trial court erred when it considered and actually found that D.J.S. committed a violation of La.R.S. 14:285(A)(2), while the state's petition charged a violation of La.R.S. 14:285(A)(1), which provides that no person shall:

> Engage in or institute a telephone call, telephone conversation, or telephone conference, with another person, anonymously or otherwise, and therein use obscene, profane, vulgar, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature or threaten any illegal or immoral act with the intent to coerce, intimidate, or harass another person.

At the conclusion of the trial, however, D.J.S. was adjudicated a delinquent for having violated La.R.S. 14:285(A)(2), which provides that no person shall:

> Make repeated telephone communications anonymously or otherwise in a manner reasonably expected to annoy, abuse, torment, harass, embarrass, or offend another, whether or not conversation ensues.

The court made the following findings in adjudicating D.J.S. delinquent:

> Revised Statute 14:285 A. (2) was the charge against Mr. [S], [D], in this matter. It states that "no person shall make repeated telephone calls anonymously in a manner reasonably expected to annoy, abuse, torment; harass; embarrass; or offend another person sets forth the penalty for the violation of that [sic]."
>
> There has been a lot of discussion, as I've previously stated on the Record, about evidence entered through the testimony and evidence presented by the State of [D.J.S.'s] conduct at school and his removal from the school. I want the Record to reflect that that evidence goes to, or was taken, specifically, as evidence of motive or as to why he may have made such threats to the principal.
>
> For example, the calls occurred the day after the expulsion hearing -- the second day the expulsion hearing was conducted. Specifically, that evidence was not considered by the Court in order to approve or attempt to approve -- to prove or attempt to prove that [D.J.S.] is a disrespectful child, or he just randomly made a phone call. So, why he was suspended from school pending his expulsion hearing was not considered as a factor by the Court. The evidence that was presented by the State consisted of the testimony of the victim and of the law enforcement officer and others who were present, and who were involved in the investigation.

11

The evidence presented by the defense, obviously, is conflicting and relies heavily upon telephone records received from cellular phone companies regarding voice usage, data usage, phone logs; dates of the calls. There's conflicting information within that information regarding the ownership of a number being to Mary Chapman, who -- there was no evidence presented as to who she is. But the phone for one of those numbers, the 244 number, being used by somebody else, [Br]andy Wilkens, who is a relative of [D.J.S.]. There was a website, or an app, I think part of the testimony was, used to convert universal time to central time, I guess on the internet. Which brings into question the reliability or the credibility of the documents provided.

So, with that, I am going to find that the State did meet their burden of proving beyond a reasonable doubt that phone calls were made in a repeated manner, which was reasonably expected to annoy, abuse, torment; harass; or embarrass or offend the other person. The other way of summarizing the Court's reasoning on this is that the victim and the supporting witnesses -- the victim certainly believed that it was [D.J.S.]. I find that she was credible and when I weigh her credibility and that of the supporting witnesses, and all the circumstances as I have set forth, including some of the evidence about [D.J.S.], himself, I find that it convinced that it is more reliable than what was presented in defense of that.

So, with that, I'm going to find that the State met its burden of proof. I'm going to adjudicate [D.J.S.] as delinquent in this docket number.

The fourth circuit addressed a similar issue in *State v. Williams*, 02-260 (La.App. 4 Cir. 3/12/03), 842 So.2d 1143, *writ denied*, 03-1991 (La. 1/16/04), 864 So.2d 625, and *writ denied*, 06-1583 (La. 3/23/07), 951 So.2d 1096, and determined that the issue was more properly whether the defendant was notified of the actual charges against him rather than what was set forth in the charging instrument. In *Williams*, the bill of information charged the defendant with second degree kidnapping under subsection B(1) of La.R.S. 14:44.1. Although the appellate court found that the evidence was insufficient to find the defendant guilty of a violation of B(1), it held that the evidence was sufficient to find him guilty of subsection B(3) of La.R.S. 14:441. Thus, the court was called upon to decide "whether the defendant's conviction can be upheld based upon subsection B(3)

12

even though the subsection alleged in the bill of information was subsection B(1)." *Id.* at 1147.

Finding that Williams' conviction could be upheld, the court noted that the defense attorney was present at a motion to suppress hearing held five months prior to trial, at which evidence to support subsection B(3) was introduced. The court also noted that it was "apparent that defense counsel had prepared his case based upon the assumption that the defendant had been charged under subsection B(3), not B(1) as alleged in the bill of information." *Id.* at 1148. The defense counsel actually moved for a directed verdict at the conclusion of the case, arguing that he had arrived that morning under the belief that the State was proceeding under B(3) only to realize at some point that the bill of information charged his client under B(1). Thus, the fourth circuit concluded that "this is not a case where counsel had been misled as to what evidence the State was planning to present and was unprepared to meet the allegations in the bill of information." *Id.*

This court, in *State v. Pennywell*, 13-1376 (La.App. 3 Cir. 5/7/14), 139 So.3d 587, reached a different conclusion under the facts presented therein. However, the rationale employed was the same, as the inquiry was whether the facts were sufficient to show that the defendant was adequately put on notice of the means or theory on which the state contended that the defendant violated the statute.

In the present case, in response to discovery motions, the state provided the defense with case reports from the Calcasieu Parish Sheriff's Office, which clearly indicated that after the initial call was received by Ms. Fox, multiple calls were received and answered by Corporal Bordelon with the caller hanging up. In addition, the original petition filed refers to multiple calls having been made rather than only one call. We find that this was sufficient to put D.J.S. on notice that

13

evidence might be introduced regarding repeated phone calls, falling under La.R.S. 14:285(A)(2) (repeated calls "anonymously or otherwise in a manner reasonably expected to annoy, abuse, torment, harass, embarrass, or offend another, whether or not conversation ensues") rather than La.R.S. 14:285(A)(1) which can apply to a single call (a telephone call "with another person, anonymously or otherwise, and therein use obscene, profane, vulgar, lewd, lascivious, or indecent language . . . or threaten any illegal or immoral act with the intent to coerce, intimidate, or harass another person"). We also find that the entire defense strategy on behalf of the D.J.S. was not predicated on contesting whether a threat of illegal or immoral action was conveyed, but on whether D.J.S. actually made any calls to Ms. Fox at all. Accordingly, we find no merit to this assignment of error.

*Cell Phone Records*

D.J.S. next contends that the evidence was insufficient to support the adjudication in that the cell phone records submitted by him clearly contradicted the evidence submitted by the state. In so stating, D.J.S. argues that the reliability of the cell phone records was not made questionable by the lack of connection of Mary Chapman to the case nor by the converting of time from UTC to CT as found by the trial court.

The standard of review in assessing the sufficiency of the evidence presented in a juvenile case is as follows:

> In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. LSA-Ch.C. art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. **State in Interest of S.T.**, 95-2187 (La.App. 1 Cir. 6/28/96), 677 So.2d 1071, 1074. In **State in Interest of Giangrosso**, 385 So.2d 471, 476 (La.App. 1 Cir. 1980), affirmed, 395 So.2d 709 (La. 1981), this court stated:

> > In juvenile proceedings, the scope of review of this court extends to both law and fact. Article 5, Section 10,

14

Constitution of 1974; see **State in Interest of Batiste,** 367 So.2d 784 (La. 1979). We must, therefore, decide if the trial judge was clearly wrong in his determination that the defendants were proven guilty beyond a reasonable doubt.

Thereafter, in **State in Interest of Giangrosso,** 395 So.2d 709, 714 (La. 1981), the supreme court affirmed, concluding that a rational trier of fact could have found, from the evidence adduced at the trial, proof of guilt beyond a reasonable doubt, citing **Jackson v. Virginia,** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and **State in Interest of Batiste,** 367 So.2d 784 (La. 1979). See **In Interest of L.C.,** 96-2511 (La.App. 1 Cir. 6/20/97), 696 So.2d 668, 669-70.

Accordingly, on appeal the standard of review for sufficiency of the evidence enunciated in **Jackson** is applicable to delinquency cases, *i.e.* viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the state proved the essential elements of the crime beyond a reasonable doubt. **Jackson,** 443 U.S. at 319, 99 S.Ct. at 2789; see also LSA-C.Cr.P. art. 821B; **State v. Ordodi,** 06-0207 (La. 11/29/06), 946 So.2d 654, 660; and **State v. Mussall,** 523 So.2d 1305, 1308-09 (La. 1988). . . .

Further, because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the trial court was clearly wrong in its factual findings. See **State in Interest of D.M.,** 97-0628 (La.App. 1 Cir. 11/07/97), 704 So.2d 786, 789-90. In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. **State in Interest of Wilkerson,** 542 So.2d 577, 581 (La.App. 1 Cir. 1989).

The **Jackson** standard is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. **State in Interest of D.F.,** 08-0182 (La.App. 1 Cir. 6/6/08), 991 So.2d 1082, 1085, writ denied, 08-1540 (La. 3/27/09), 5 So.3d 138. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Captville,** 448 So.2d 676, 680 (La. 1984).

*State in the Interest of M.P.,* 17-892, pp. 6-8 (La.App. 1 Cir. 11/1/17), 233 So.3d 633, 638-40 (footnote omitted).

15

"In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion." *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04), 874 So.2d 66, 79, *cert. denied*, 543 U.S. 1023, 125 S.Ct. 658 (2004). Thus, where there is no such conflict, the trial court's crediting of a witness's statement can never be manifestly erroneous or clearly wrong. *State in the Interest of C.D.*, 11-1701 (La. 7/2/12), 93 So.3d 1272.

In adjudicating D.J.S. delinquent, the trial court stated in pertinent part:

There's conflicting information within that information regarding the ownership of a number being [sic] to Mary Chapman, who -- there was no evidence presented as to who she is. But the phone for one of those numbers, the 244 number, being used by somebody else, [Br]andy Wilkens, who is a relative of [D.J.S.]. There was a website, or an app, I think part of the testimony was, used to convert universal time to central time, I guess on the internet. Which brings into question the reliability or the credibility of the documents provided.

After reviewing the evidence presented at the adjudication hearing, we find that the phone records do not so contradict Ms. Fox's testimony that a reasonable factfinder would not credit her testimony and, as such, find no manifest error by the trial court in adjudicating D.J.S. as delinquent. Ms. Fox was adamant that she recognized the voice on the phone in the initial call when she was threatened as being that of D.J.S. Evidence offered by the state showed that Ms. Fox had repeated contacts with D.J.S. in the months leading up to the events of that day, corroborating her ability to recognize his voice. The testimony of Ms. Phenice corroborated her many contacts with D.J.S. Additionally, Ms. Fox immediately advised Corporal Bordelon that the caller was D.J.S. While Ms. Conn's interpretation of the cell phone records was that no calls were made by numbers associated with D.J.S. to the school, she admitted to having to convert the records to the proper time zone using an internet-supplied conversion tool.

In addition, we note that there were no records discussed or admitted pertaining directly to the school's phone number, identified as 217-4690, the number to which the caller identification system attached. Essentially, the trial court was in the position of weighing the testimony of Ms. Fox against the testimony of Ms. Conn in interpreting the phone records. It is obvious that the trial court had some doubts as to the cell phone records, and it gave greater weight to the direct testimony of Ms. Fox that she recognized D.J.S. by voice as the caller who made the threatening call immediately prior to the repeated hang up calls that followed. The testimony of Ms. Fox is not so internally inconsistent with the documentary evidence from the phone logs, given the testimonial evidence offered in connection therewith, as to amount to manifest error in choosing the former over the latter. Thus, we do not conclude that the trial court's decision was clearly wrong, and we affirm the adjudication of delinquency based on the finding that D.J.S. committed the offense of telephone harassment.

## DISPOSITION

For the reasons herein, we affirm the adjudication of the trial court finding the minor, D.J.S., to be delinquent for having committed the offense of telephone harassment.

**AFFIRMED.**