# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-157 C/W 22-221

**STATE OF LOUISIANA IN THE
INTEREST OF H.B.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, DOCKET NOS. J-3398 AND J-3415
HONORABLE WARREN D. WILLET, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS
CHIEF JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Van H. Kyzar and Gary J. Ortego, Judges.

**AFFIRMED IN PART; VACATED IN PART; RESPONSIVE VERDICT
ENTERED; REMANDED FOR RESENTENCING.**

**James P. Lemoine, District Attorney**
**Jimmy D. White, Assistant District Attorney**
**Thirty-fifth Judicial District**
**P.O. Box 309**
**Colfax, LA 71417**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P.O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **H.B.**

**COOKS, Chief Judge.**

## FACTS AND PROCEDURAL HISTORY

On or about July 8, 2021, three-year-old N.D. reported to her babysitter that when she used the bathroom her private area hurt. The babysitter asker her why it hurt, and N.D. responded that H.B. had touched her there and put his finger inside of her. The babysitter testified N.D.'s private area was red. The babysitter called N.D.'s father and told him what N.D. had said. N.D. was brought the next day to a nurse-practitioner. The nurse-practitioner, who was a mandated reporter, contacted the police on suspicion of sexual assault.

Detective Ryan James of the Grant Parish Sheriff's Office had N.D. interviewed by the Children's Advocacy Center and examined by a Sexual Assault Nurse Examiner (SANE). Based on the information heard during the interview, the Grant Parish Sheriff's Office requested that a warrant issue for the Juvenile, H.B.'s arrest for first degree rape of N.D. At the time of arrest, H.B. was a nearly fifteen-year-old male.

On August 2, 2021, H.B., was charged by petition in lower court docket number J-3398 with one count of first degree rape of N.D., a violation of La.R.S. 14:42, and two counts of sexual battery of N.D., violations of La.R.S. 14:43.1.

On the same day H.B. was arrested and released on the charges against N.D., Detective James received a report involving T.J., a seven-year-old male child at the time. It was alleged that T.J. had been sexually assaulted by H.B. Detective James made arrangements for T.J. to be interviewed at the Children's Advocacy Center and to also be examined by the SANE nurse, Amy Mundy, who examined N.D. During the examination, Ms. Mundy stated T.J. told her H.B. had touched his "peepee" and hurt him where he goes to the bathroom. Ms. Mundy was told that H.B. babysat T.J. and would watch pornography and then do the things he saw with T.J. It was further stated by T.J. that he was forced to suck H.B.'s "peepee" like a sucker.

2

On September 23, 2021, H.B. was charged by petition in a separate lower court docket number (J-3415) with one count of first degree rape of T.J., and two counts of oral sexual battery of T.J.

The charges in both petitions were consolidated for adjudication. After an adjudication hearing held on November 3, 2021, the trial court found H.B. delinquent as to the first degree rape of N.D., the first degree rape of T.J. and oral sexual battery of T.J.

Although the disposition hearing was originally scheduled for December 1, 2021, on that date the State and the defense jointly moved for a continuance of the disposition until December 16, 2021. On December 16, 2021, the trial court imposed the following dispositions:

- First degree rape of N.D. – Secure placement with the Department of Public Safety and Corrections until the Juvenile is twenty-one, without the benefit of probation or suspension of sentence.

- First degree rape of T.J. - Secure placement with the Department of Public Safety and Corrections until the Juvenile is twenty-one, without the benefit of probation or suspension of sentence.

- Oral sexual battery of T.J. – Secure placement with the Department of Corrections for a period of six years, but not to exceed the Juvenile's twenty-first birthday.

The trial court ordered all of the dispositions to run concurrently with one another. The trial court also notified H.B. of his responsibility to register as a sex offender for life and issued a protective order prohibiting H.B. from having any contact with the victims. Finally, the trial court ordered the Office of Juvenile Justice to provide H.B. with an educational plan and counseling.

On January 11, 2022, H.B. filed a motion for appeal as to both docket numbers. Both matters were consolidated for appeal. On the appeal concerning the charges against N.D., H.B. alleges six assignments of error – one asserting the evidence was insufficient to find him guilty of the first degree rape of N.D., one

alleging the victim (N.D.) was not competent to testify, one alleging the State's use of leading questions in its examination of N.D. was erroneous, two pertaining to the disposition and lifetime sex offender notification requirement, and the final pertaining to the failure to transcribe bench conferences. As to the appeal on the charges against T.J., H.B. alleges four assignments of error – one challenging the disposition for the first degree rape and lifetime sex offender notification requirement, one challenging the excessiveness of the disposition imposed for oral sexual battery, one alleging ineffective assistance of counsel and one alleging the failure to transcribe bench conferences.

## ANALYSIS

### Errors Patent Review.

A review of the record for errors patent reveals the trial court incorrectly advised the Juvenile as to the time period for filing post-conviction relief when it informed him that he had a "period of two (2) years for seeking any post-conviction relief . . . ." Louisiana Code of Criminal Procedure Article 930.8 requires the trial court to inform a defendant at sentencing that he has two years "after the conviction and sentence has become final" to seek post-conviction relief. *State v. Green*, 21-14, 21-15, p. 4 (La.App. 3 Cir. 10/27/21), 329 So.3d 917, 921. "Although the Louisiana Children's Code contains no similar provision, this court has required this notice be given to juveniles." *State in the Interest of C.C.H.*, 21-19, p. 41 (La.App. 3 Cir. 5/5/21), 319 So.3d 940, 963; *State in the Interest of R.J.H.*, 21-20, p. 38 (La.App. 3 Cir. 5/5/21), 319 So.3d 964, 985; *State in the Interest of J.J.M.*, 16-347 (La.App. 3 Cir. 11/9/16), 207 So.3d 609. As will be discussed later, finding that the disposition for first degree rape against N.D. must be vacated and the case remanded for a new disposition hearing, we will direct the trial court to inform the Juvenile of the correct provisions of La.Code Crim.P. art. 930.8 at the new disposition hearing.

4

Second, we find the trial court failed to render a judgment as to the two counts of sexual battery of N.D. charged in the petition. When announcing its judgment, the trial court found the State proved the Juvenile committed the offense of first degree rape against N.D. The State responded:

BY MS. NUGENT: Your Honor, I do have two (2) counts of sexual battery on there, I just want to keep the record clean with N.D. Did you find or guilty [sic] or - - or not - - guilty or not guilt [sic] in 3398? Is was [sic] one (1) count 1st degree rape, and two (2) counts of sexual battery.

BY THE COURT: I think the rape is good enough.

Subsequently, at the disposition hearing the trial court recapped the procedural history of the case, noting the adjudications in both the current docket number (J-3398) and a separate docket number (J-3415):

BY THE COURT: Okay. And uh, just procedurally there was an adjudication hearing that was held back in November, and after or at the conclusion of that dispositional hearing, the Court did make a finding that in J-3415, which was a case that involved a juvenile with the initials T.J. that the Court found that in connection with that proceeding that the State had met it's [sic] burden of proving beyond a reasonable doubt that Mr. H.B. had committed the offenses of [First] Degree Rape, and Oral Sexual Battery.

On the same date, there was also presented a case in docket number 3398 involving a victim having the initials N.D., and the Court found that at the conclusion of that proceeding that in - - there that the State had met it's [sic] burden of proving beyond a reasonable doubt that the juvenile H.B. had committed the offense of [First] Degree Rape.

I know that there were other charges, and in reviewing the transcript of that proceeding, it may have not been totally clear of the Court's finding, and I wanted to clarify that for the record. I believe that the transcript does accurately reflect that, and I am not changing or amending anything, I'm just trying to clarify why Mr. H.B. is here today.

Louisiana Code of Criminal Procedure Article 819 provides that "[i]f there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count." Since there is no similar provision in the Louisiana Children's Code, Article 819 is applicable to the current case. *See*

5

La.Ch.Code art. 104. In *State in the Interest of J.L.*, 08-538 (La.App. 3 Cir. 10/1/08) (unpublished opinion),[1] this court applied Article 819 to a juvenile case. J.L. was charged with one count of aggravated battery, two counts of disturbing the peace by fighting, one count of simple damage to property, and one count of a curfew violation. The trial court found J.L. "had committed a delinquent act, which would have been considered aggravated battery if J.L. had not been a child." *Id.*, at p. 1. The trial court also found the State failed to carry its burden of proof as to the criminal damage to property charge. The trial court, however, did not pronounce a judgment against J.L. as to the two counts of disturbing the peace by fighting and the curfew charge. In its error patent review, this court stated the following:

> Finally, there is an error regarding the failure of the trial court judge to dispose of all the pending charges. Louisiana Code of Criminal Procedure Article 819 provides that, "If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count." As noted above, J.L. was charged with two counts of disturbing the peace by fighting. At the adjudication proceedings, the trial court judge stated that, "Inherent within this battery is that J.L. did in fact Disturb the Peace by Fighting, which is a less[e]r charge . . . . I am going to adjudicate the child to be a delinquent child as a result of the aggravated battery." The trial court effectively acquitted J.L. of both counts of disturbing the peace by fighting and disposed of both of these charges.

> J.L. was also charged with a curfew violation. Information obtained from the trial court clerk's office indicates there are no additional minute entries resolving the disposition of this offense. The remedy for failure of the trial court judge to dispose of these charges is remanding the case for a determination of a proper disposition of this charge. *See State v. Pitre,* 04-1134 (La.App. 3 Cir. 2/9/05), 893 So.2d 1009; *State v. Hypolite,* 04-1658 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, *writ denied,* 06-618 (La .9/22/06), 937 So.2d 381.

*Id.* at p. 9.

We find the trial court's judgment as to the two counts of sexual battery is not clear, therefore, we remand the case for proper disposition of the two counts of sexual battery.

---

[1]This case is cited at 2008 WL 4414755.

6

*Finding of Delinquency of First Degree Rape of N.D.*

In his first assignment of error, H.B. contends the evidence was insufficient to prove he committed the offense of first degree rape of N.D. He argues that N.D., just shy of four years old at the time of trial, was incompetent to testify. Additionally, H.B. asserts that N.D.'s responses to leading questions were insufficient and that there was no evidence to corroborate N.D.'s testimony. The State responds that N.D.'s testimony was sufficient to support the trial court's finding of delinquency.

This court has stated the following regarding the standard of review in juvenile cases:

> The standard of review in assessing the sufficiency of the evidence presented in a juvenile case is as follows:
>
> > In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. LSA-Ch.C. art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. *State in Interest of S.T.*, 95-2187 (La.App. 1 Cir. 6/28/96), 677 So.2d 1071, 1074. In *State in Interest of Giangrosso*, 385 So.2d 471, 476 (La.App. 1 Cir. 1980), *affirmed*, 395 So.2d 709 (La. 1981), this court stated:
> >
> > > In juvenile proceedings, the scope of review of this court extends to both law and fact. Article 5, Section 10, Constitution of 1974; *see State in Interest of Batiste*, 367 So.2d 784 (La. 1979). We must, therefore, decide if the trial judge was clearly wrong in his determination that the defendants were proven guilty beyond a reasonable doubt.
> >
> > > Thereafter, in *State in Interest of Giangrosso*, 395 So.2d 709, 714 (La. 1981), the supreme court affirmed, concluding that a rational trier of fact could have found, from the evidence adduced at the trial, proof of guilt beyond a reasonable doubt, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *State in Interest of Batiste*, 367 So.2d 784 (La. 1979). *See In Interest of L.C.*, 96-2511 (La.App. 1 Cir. 6/20/97), 696 So.2d 668, 669-70.

7

Accordingly, on appeal the standard of review for sufficiency of the evidence enunciated in *Jackson* is applicable to delinquency cases, *i.e.* viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the state proved the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *see also* LSA-C.Cr.P. art. 821B; *State v. Ordodi*, 06-0207 (La. 11/29/06), 946 So.2d 654, 660; and *State v. Mussall*, 523 So.2d 1305, 1308-09 (La. 1988) . . . .

Further, because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the trial court was clearly wrong in its factual findings. *See State in Interest of D.M.*, 97-0628 (La.App. 1 Cir. 11/07/97), 704 So.2d 786, 789-90. In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *State in Interest of Wilkerson*, 542 So.2d 577, 581 (La.App. 1 Cir. 1989).

The *Jackson* standard is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. *State in Interest of D.F.*, 08-0182 (La.App. 1 Cir. 6/6/08), 991 So.2d 1082, 1085, *writ denied*, 08-1540 (La. 3/27/09), 5 So.3d 138. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Captville*, 448 So.2d 676, 680 (La. 1984).

*State in the Interest of M.P.*, 17-892, pp. 6-8 (La.App. 1 Cir. 11/1/17), 233 So.3d 633, 638-40 (footnote omitted).

*State in the Interest of D.J.S.*, 18-239, pp. 14-15 (La.App. 3 Cir. 9/26/18), 255 So.3d 1177, 1187-88, *writ denied*, 18-1753 (La. 12/17/18), 259 So.3d 339 (alteration in original).

First degree rape is set forth in La.R.S. 14:42(A) as follows:

First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

. . . .

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

The State did not set forth the subsection of La.R.S. 14:42 that the prosecution was based on, however the petition clearly tracks subsection four as no mention of resistance was mentioned and clearly N.D. was under the age of thirteen.

Amy Mundy, the SANE nurse who examined N.D., testified concerning her examination of N.D. and those findings:

A. So she was a three (3) year old um, her demeanor, whenever her exam was conducted, and let me get to that page. Um, she was calm, she was cooperative, she made good eye contact. Um, I didn't see any abnormalities for her age as far as um, she was supposedly starting pre-K or kindergarten, I mean, everything for her age was - - I didn't find anything that was out of the ordinary.

Q. Okay, did she seem to understand the questions you were asking her?

A. Yes.

Q. Did she have an ability to communicate with you?

A. Yes.

Q. Um, and when you say you didn't see anything out of the ordinary uh, developmentally, did she seem on par?

A. Yes.

Q. Did you check her vital statistics? Is that an uh, a part of it normally?

A. Yeah, I did.

Q. Any - - anything unusual with respect to that?

A. No, everything was in - - was in her age limit right now.

. . . .

9

Q. Did you notice anything else in her vaginal area?

A. Yes, I found some um, abnormal finding. Um, there was some um, arrhythmia of the posterior left labium majus, and posterior (indistinct), which is the bottom at the 6:00 o'clock mark.

Ms. Mundy explained that "arrhythmia" is redness, and the "posterior left labium majus" is the external part of the vagina. When asked if she was able to determine the cause of the redness, Ms. Mundy replied:

A. Well, whenever, um, we're doing an exam, one of the questions that I asked N.D. or any child that I have, did something happened [sic] to you or do you know why you are here today? And. N.D.'s response was that um, she said that H.B. and H. hurt her there, pointing to her private area. And so, that led us into the exam.

Q. Okay, and did she say anything else about that um, she said H.B. and H. hurt her, pointed at that area, any other comments about what may be going on?

A. Well, there's another section where we try to see if like, which parts of the vagina, if that was what was hurt or the rectum, or the mouth, or whatever part of the victim's bother [sic] - - bottom - - body that was hurt, and when we got to the area, she did state that H.B. touched her private area with his hand.

Q. With his hand, okay.

A. And then the findings would be consisted [sic] um, with an inappropriate sexual touching.

On cross-examination, defense counsel asked Ms. Mundy if other things can cause arrhythmia on a person's vagina. Ms. Mundy responded:

A. There are other things, but with the fact that N.D. reported it to her father who then reported it to um, Casey, and then to me, and her story was consistent with sexual abuse.

Defense counsel then asked if Ms. Mundy's opinion would change if she knew that the nurse who previously examined N.D. used a speculum. Ms. Mundy stated her opinion would change and explained as follows:

A. Because you would never want to put a speculum in a child even though it's a small - - when you have a three (3) or four (4) year old that - - lets see N.D. weighed thirty-nine (39) pounds, the body is not made to have anything inserted into a body at thirty-nine (39) pounds.

10

When asked if the redness on N.D.'s external vaginal area could have been caused by something other than sexual abuse, like "getting on a bicycle," Ms. Mundy testified that it "would had to have been probably some sort of fall from a bicycle," and "there was no allegations that a bicycle was involved." Ms. Mundy did agree there was no tearing on N.D.

Callie Slayton, who was the eighteen-year-old who babysat N.D., testified she was at Mr. Decker's house giving her own six-month-old daughter a bath, when the following event occurred:

A. [N.D.] had to go use the bathroom, and she came up to me, and said that her private hurt, and I asked her well, why was her private hurting, and she said that H.B. touched me there.

Q. Okay, when she said her private hurt, did you try to determine what she was talking about?

A. Yes, ma'am.

Q. How did you do that?

A. She started pointing at it, and I was like well you're going to have to tell your daddy about it, and she told me not to tell her dad because she thought she would get into trouble.

Q. Okay, so I'm going to ask you, when - - what area did she point at?

A. At - - like - -

Q. Go ahead and call it what it is.

A. Her vagina.

Q. She pointed at her vagina? So you understood when she said my private hurts that that's what she was talking about?

A. Yes, ma'am.

Q. And you asked her, what caused it?

A. Yes, ma'am.

Q. And I'm sorry, she said what?

A. She said he touched her there.

11

Q. And she said, who did she say did that?

A. H.B.

Q. H.B., and she used the word touched?

A. Yes, ma'am.

Q. Okay, did you look at her or anything?

A. Yes, and she was red.

Q. Okay, and did you ask her any other questions about what she was talking about when she said he touched her?

A. Yes, ma'am, she said that he put his - - his finger inside her.

According to Mrs. Slayton, she accompanied N.D. to see Casey Hebert, the nurse practitioner. Ms. Slayton testified that she was in the room when Ms. Hebert examined N.D. and that Ms. Hebert did not use a tool or put anything inside N.D. during the exam.

N.D. was called to the stand to testify. Counsel for H.B. objected to her competency to testify based largely on the assertion that there were no cases in Louisiana where a three-year-old child was allowed to testify. The trial court stated that it could not make a determination of her competency until N.D. was asked questions. In response to the State's questions, N.D. testified that she was three-years-old, that her birthday was December 13th, and that she would be four-years-old on her next birthday. N.D. indicated that she knew the difference between a truth and a lie and testified that a lie would cause bad stuff to happen to you while the truth would cause good things to happen. N.D. also testified as to her full street address, including the house number, street, and town. Finding N.D. competent to testify, the trial court stated that she knew "more than most children witness [sic] that I've encountered [.]"

N.D. identified H.B. in court. N.D. testified that H.B. came to her house and did something wrong to her and her little brother, H.C. N.D. testified that a girl's

12

private part is called a "[t]ooty," and a boy's private part is called a "weiner."[2] When asked if she had ever seen a "weiner," N.D. said "[y]es," and then pointed to H.B. when asked whose "weiner" she had seen. The following colloquy took place between N.D. and the State:

Q. When did you see H.B.'s weiner?

A. Yesterday.

Q. Yesterday? How did you see it, what happened?

A. Well, he got my little brother, and he humped him two (2) times.

Q. He got on your little brother, and humped him?

A. Two (2) times.

Q. What - - what do you mean by humped him?

A. He did it twice.

Q. Okay, yeah, but what is humped him?

A. Uh, hum, . . .

Q. What does that mean when you say humped him?

A. That's bad.

Q. That's bad? Can you show me what you mean by that?

A. It - - it's called a lie.

Q. It's what?

A. It's called a lie.

Q. Hum, not sure what word that was.

A. A ride.

Q. A ride?

A. No, a lie.

Q. A lie, it's a lie. What's a lie? Okay, stop jumping around for me so I can hear you.

_____

[2] Throughout the testimony in the record, the transcript incorrectly spells "wiener" as "weiner."

A.     A lie.

Q.     What's a lie?

A.     That's the bad stuff.

Q.     Humping is a bad stuff?  Okay, has he ever done anything to you?

A.     Yes.

Q.     What?  Stop jumping around, . . .

A.     Well.

Q.     . . . and tell me what he did.

A.     He put me on top of him.

Q.     Put you on top of him?  Okay, put you how on top of him?

A.     His hands.

Q.     His hands.  What part of you was on him?  Stop jumping around, and tell me.

A.     Hum, . . .

Q.     What - - what part of him . . .

A.     His belly.

Q.     His belly, what part of you touched him?

A.     Um, nowhere.

Q.     Nowhere?  What part of him was he putting you on?

A.     Um, his top.

Q.     His top?

A.     In his belly.

Q.     In his belly?  When you say his top, is there a name you call that?

A.     Yes.

Q.     What?

A.     Lied.

Q.     Lied.  Did he ever touch you with any - - with his weiner?  Yes or no?

14

A.     Yes.

Q.     Where did he touch you?

A.     He was - - he was playing around with it.

Q.     He was playing with it?

A.     Yes.

Q.     What was he doing with it?

A.     Yesterday.

Q.     Not when, what?

A.     A lie . . .

Q.     A lie?

A.     I call it a lie.

Q.     I know you call it a lie.  Was a good thing or a bad thing?

A.     A bad thing.

Q.     Did he hurt you?

A.     Well yeah.  Well . . .

Q.     Okay, sit down, stop jumping.

A.     Well he - - well . . .

Q.     Okay, sit down, stop jumping,

A.     Well he - - well . . .

Q.     I need you to sit.

A.     . . . well he burned me.

Q.     He burned you?

A.     Yes.,

Q.     He burned you where?

A.     Well, . . .

Q.     Are you pointing to your peepee?

15

A.    No.

Q.    What did - - what did you call it[?]

A.    A private.

Q.    Private.  He burned - - quit jumping, sit so you can talk to me.  Look at me.  He burned you?  How did he burn you?

A.    Well he got his all stuffed.

Q.    He got all what stuffed?  He got your private stuffed?  What did he stuff it with?

A.    His weiner.

Q.    His weiner?  Okay, and where were you when that happened?

A.    Um, on the bed.

Q.    In whose room?

A.    In mine.

N.D. testified that H.B. took her clothes and his clothes off.  When the State asked N.D. if she saw H.B.'s "weiner," no response was recorded.  The following colloquy then took place:

Q.    Can you tell me what it looked like?

A.    It looked like one (1) bowl of chippies.

Q.    A bowl of chippies?  Explain that to me.  Have you ever seen anything that looked like a weiner?  Sit down, settle down, settle down.

A.    Well, chippie is rectangles, and they got holes.

Q.    Rectangles?

A.    And they got holes.

Q.    And holes?  What . . .

A.    A hole.

Q.    . . . okay, can you show me how big it was?

A.    It was that big.

Q.    Well that's pretty big.  And he put you on top of that you said?  Okay stop jumping around.  Did it hurt?

A.   Well, he burned it all up.

    . . . .

Q.   Tell me has he ever done anything else bad to you?

A.   Well, yes.

Q.   Well yes, like what?  What other bad thing has he done?

A.   Um, (indistinct) well, he put his weiner in me.

Q.   He put his weiner in you?  Anything else he ever did?

A.   Yes.

Q.   What?

A.   Well he did put me on the couch, but I was his - - best friend.

N.D. also testified in response to the State's question of whether H.B. made her touch his "weiner."  The following colloquy then took place:

Q.   Okay.  Has H.B. ever make [sic] touch his weiner?

A.   Yes.

Q.   When and where?

A.   Wednesday.

Q.   Wednesday, good answer.  What did you have to touch it with?

A.   Well, - -

Q.   Your mouth?  You're pointing to you [sic] mouth.  Can you tell us that out loud?

A.   Well yes.

Q.   Can you tell me what you're pointing to?

A.   My mouth.

    . . . .

Q.   What did you have to do with it?

A.   Do nothing.

Q.   Huh?

17

A.  Do nothing.

Q.  Do nothing?

A.  Well suck it.

Q.  Suck it?  Okay, how did you know how to suck it?  Did he tell you to do that?

A.  Yes.

.  .  .  .

Q.  So tell me when you had to suck him, tell me what it felt like.

A.  Well - - well, it felt like one (1) ball of cheese.

Defense counsel did not cross-examine N.D. but objected to the competency of the witness and the "extraordinary leading" questions asked by the State.

A review of N.D.'s testimony clearly reveals it was difficult to follow and the responses to critical questions were often non-responsive or inconsistent.  This is understandable given the age of N.D.  At the beginning of her testimony, when asked when was the last time she had seen H.B.'s wiener, N.D. responded "yesterday," although it had been months since she had been in H.B.'s presence.  Similarly, when asked later in questioning when she had touched H.B.'s wiener, she responded "Wednesday."  As counsel for H.B. notes in brief, when N.D. described being put on top of H.B. and his belly or "lied" touched her, the State asked N.D. if she had ever been touched by H.B.'s weiner.  Although N.D. responded yes, her responses to the follow-up questions were that he burned her, but not in her "peepee."  During the entirety of N.D.'s testimony, she was moving around and wandering away from the witness stand.  At one point, N.D. stated she had to go talk to H.B.

The State quotes long-standing jurisprudence that "[a] rape victim's testimony alone is sufficient to establish the fact of penetration."  *State v. H.J.L.*, 08-823, p. 5 (La.App. 3 Cir. 12/10/08), 999 So.2d 338, 342, *writ denied*, 09-606 (La. 12/18/09), 23 So.3d 936.  While this is true, we have been unable to find a case where the victim

18

testifying was of such a young age as N.B. The State argues the allegation of rape was corroborated by the physical findings of redness to the victim's vagina. We agree that the physical findings of redness to the victim's vagina can be evidence of physical abuse. Counsel for H.B. concedes the testimony of others besides N.D. sufficiently established the crime of sexual battery. However, the question before us is did the testimony and evidence prove the commission of first-degree rape beyond a reasonable doubt. Ms. Slayton testified when she asked N.D. why her private was hurting, she said that "H.B. touched me there." Later in her testimony, Ms. Slayton repeated that when she asked N.D. what had happened with H.B., N.D. responded that "he put his - - his finger inside her." Similarly, Nurse Mundy's testimony only stated that N.D. told her that "H.B. touched her private area with his hand." Nurse Mundy also agreed there was no tearing on N.D.

Considering the lack of corroborating evidence, we cannot find the State met its burden of proving beyond a reasonable doubt that a rape of N.D. occurred. The testimony of N.D. was too unreliable without corroboration to sufficiently prove "an act of anal, oral or vaginal intercourse occurred." Therefore, we must set aside the adjudication of delinquency against H.B. for committing first degree rape of N.D.

Counsel for H.B. acknowledges the evidence was sufficient to prove beyond a reasonable doubt that H.B. committed the responsive offense of sexual battery against N.D. Therefore, a judgment of conviction of the lesser offense of sexual battery is hereby rendered, and this matter is remanded to the trial court for resentencing on the modified judgment of conviction.

***Other Assignments of Error Relating to the Delinquency Findings Involving N.D.***

In his second assignment of error as to the adjudications involving N.D., H.B. argued the trial court abused its discretion in finding N.D., a three-year-old child, was competent to testify, thereby violating his right to a fair trial. In his brief, H.B.

19

acknowledges the testimony of others besides N.D. sufficiently established the crime of sexual battery:

> Both Ms. Slayton and Nurse Mundy testified that N.D. stated that H.B. touched her private area with his hand or finger. These witnesses corroborated part of N.D.'s testimony of an improper touching and would support the touching element of sexual battery. Through the testimony of Detective James, the State established the age of both N.D. and H.B. and that there was almost an eleven-year gap in their ages. Additionally, H.B. testified to his birth date and N.D. testified that she was three years old. These statements supported a finding that N.D. was under the age of fifteen and was at least three years younger than H.B.
>
> The evidence admitted at the adjudication hearing was insufficient to prove beyond a reasonable doubt that H.B. committed the offense of first degree rape. However, the evidence was sufficient to prove that a sexual battery had occurred.

Having found that the evidence was not sufficient to establish the offense of first degree rape, this assignment of error is rendered moot.

Similarly, H.B.'s third assignment of error, contending the trial court abused its discretion in permitting the prosecution to ask leading questions throughout the testimony of N.D., is rendered moot by our reversal of the first degree rape adjudication.

In his fourth assignment of error, H.B. alleges the State failed to prove he was fourteen at the time of the offense; thus, the trial court erred in applying the mandatory disposition provided for in La.Ch.Code art. 897.1(B) and in requiring the Juvenile to comply with the lifetime sex offender registration requirements. The mandatory sentencing provision of La.Ch.Code art. 897.1(B) applies only to a juvenile who commits first degree rape, not sexual battery, when he is fourteen years old or older. Having vacated the adjudication of first degree rape, these sentencing provisions are also set aside, thereby rendering this assignment of error moot. Likewise, H.B's fifth assignment of error that his trial counsel was ineffective for failing to object to the trial court's application of these two provisions is rendered moot.

**Disposition for First Degree Rape of T.J.**

H.B. does not appeal the delinquency finding that he committed first degree rape of T.J. However, H.B. does allege the State failed to prove he was fourteen at the time of the offense and erred in applying the mandatory disposition set forth in La.Ch.Code art. 897.1(B) and in requiring him to comply with the lifetime sex offender registration requirements. In a related assignment of error, H.B. also asserts his trial counsel was ineffective for failing to raise this issue at his disposition hearing.

There was no dispute that H.B.'s date of birth was September 5, 2006. The petition sets forth the date of the first degree rape of T.J. as on or around March 4, 2021 to April 4, 2021. On March 4, 2021, H.B. was approximately fourteen years and five months old. When imposing the disposition for first degree rape, the trial court stated the following:

> With respect to the offenses of 1st degree rape, Children's Code Article 897.1 indicates that after the adjudication for a felony grade delinquent act based on a violation of Revised Statute 14:42, 1st degree rape, the Court shall commit the child who is fourteen (14) years or older at the time of commission of the offense to the custody of the Department of Public Safety and Corrections to be confined in secure placement until the child obtains the age of twenty-one (21) years, without the benefit of probation or suspension of imposition or execution of sentence.

> Both counsel have recognized that statutorily that there is a mandatory sentence for the charges or offenses of 1st degree rape. As with all proceedings, the Court feels that there is a requirement that the Court decides [sic] whether or not that sentence or disposition is appropriate.

> Due to the facts and circumstances of the case, based upon the evidence that was presented, and the information that the Court has received which does include a psycho-sexual assessment that was preformed [sic] by a Doctor Sam, it is dated December the 15th of 2021. As I indicated, a copy of that - - the evaluation date was November the 24th of 2021, that assessment has been provided to both counsel for their review in preparation for the dispositional hearing.

> The Court finds that based upon that information, that the mandatory sentence associated with the offense of 1st degree rape is appropriate.

21

Therefore, for each adjudication for 1st Degree Rape, the Court is going to commit H.B. to the custody of the State of Louisiana through the Department of Public Safety and Corrections to be placed in a secure placement until his - - until the age of twenty-one (21). That disposition is without benefit of probation or suspension of execution of sentence.

. . . .

Due to Mr. H.B.'s age, and the nature of the offenses, the Court is notifying both he, and his counsel of his responsibilities to register as a sex offender.

H.B. signed a notification of sex offender registration form informing him that he must register as a sex offender for the duration of his lifetime.

The Children's Code states the following about the duration of the disposition imposed upon a juvenile who was fourteen years or older at the time he committed first degree rape:

After adjudication of a felony-grade delinquent act based upon a violation of R.S. 14:42, first degree rape, or R.S. 14:44, aggravated kidnapping, the court shall commit the child who is fourteen years or older at the time of the commission of the offense to the custody of the Department of Public Safety and Corrections to be confined in secure placement until the child attains the age of twenty-one years without benefit of probation or suspension of imposition or execution of sentence.

La.Ch.Code art. 897.1(B) (in pertinent part).

As for the sex offender notification requirements at issue, La.R.S. 15:542(A) provides, in pertinent part:

The following persons shall be required to register and provide notification as a sex offender or child predator in accordance with the provisions of this Chapter:

. . . .

(3) Any juvenile, who has attained the age of fourteen years at the time of commission of the offense, who has been adjudicated delinquent based upon the perpetration, attempted perpetration, or conspiracy to commit any of the following offenses:

(a) Aggravated or first degree rape (R.S. 14:42), which shall include those that have been adjudicated delinquent based upon the perpetration, attempted perpetration, or conspiracy

to commit aggravated oral sexual battery (formerly R.S. 14:43.4, Repealed by Acts 2001, No. 301, § 2) occurring prior to August 15, 2001.

Louisiana Revised Statutes 15:544(B), in pertinent part, states the following regarding the lifetime registration requirement:

(2) Any of the following persons required to register pursuant to this Chapter shall register and provide notification for the duration of their lifetime, even if granted a first offender pardon, unless the underlying conviction is reversed, set aside, or vacated, except for those convictions that were reversed, set, aside, or vacated pursuant to Code of Criminal Procedure Article 893 or 894, or a similar provision of federal law or law from another state or military jurisdiction:

. . . .

(b) A juvenile adjudicated for the enumerated offenses in R.S. 15:542(A)(3).

Defense counsel argues that no testimony was submitted as to a specific date on which the first degree rape of T.J. occurred. It is also maintained T.J. never provided a time frame. Although the petition provided a date range of a one-month period, the date range was not discussed in the testimony offered at the adjudication hearing.

During T.J.'s examination and interview with Ms. Mundy, he told her the offense occurred "when his daddy was with Leah, and then also when his dad was with his mom Kim". Kimberly O'Quin is T.J.'s stepmother. She met and began her relationship with the victim's father no earlier than December of 2020. At that time, H.B. would have been several months past his fourteenth birthday. Therefore, any actions perpetrated by H.B. after Ms. O'Quin became involved with the family would have occurred after he was fourteen. Considering Ms. Mundy's testimony that T.J. told her the offenses committed by H.B. occurred while he was "with his mom, Kim," we find the evidence adduced at trial was sufficient to prove H.B. was fourteen at the time he committed the first degree rape of T.J.

*Disposition for Oral Sexual Battery of T.J.*

H.B. argues the disposition imposed for oral sexual battery was excessive and nothing more than cruel and unusual punishment and fails to ensure the requisite rehabilitative features are in place. He also alleges his trial counsel was ineffective for failing to object to the disposition imposed and for failure to file a motion to reconsider sentence.

For the adjudication of the first degree rape of T.J., the trial court committed H.B. to the custody of the State of Louisiana through the Department of Public Safety and Corrections to be placed in secure placement until he is twenty-one. For oral sexual battery, the trial court placed H.B. in secure placement for six years, but not to exceed his twenty-first birthday. The trial court ordered the dispositions to run concurrently, gave H.B. credit for time served, and notified him of the sex offender registration requirements. Also, at the State's request, the trial court issued a protective order preventing the Juvenile from having any type of contact with the victims, T.J. and N.D. Finally, the trial court stated:

> BY THE COURT: Mr. Huddleston, during your comments you had referenced an educational program for Mr. H.B. . . . .
>
> BY MR. HUDDLESTON: I did, Your Honor.
>
> BY THE COURT: . . . the Court does feel that that is necessary, and appropriate. The - - the evaluation does indicate that Mr. H.B has experienced some things in his life that the Court feels needs to be addressed, and therefore, the Court is going to order that the Office of Juvenile Justice provide H.B. with, not only an educational plan, but also provide him with counseling to address any physical abuse issues that he has suffered as well as to address the sexual issue [sic] that were identified in the psycho-sexual evaluation . . .
>
> BY MR. HUDDLESTON: Thank you, Your Honor.
>
> BY THE COURT: . . . during the course of his confinement.

The record reveals the trial court complied with La.Ch.Code art. 893 in this case. A psycho-sexual evaluation was ordered and reviewed by the trial court prior

24

to disposition. The trial court also ordered H.B. receive the treatment recommended by the doctor who evaluated the H.B. Further, the trial court gave both parties an opportunity to present argument and/or evidence for the trial court to consider.

The six-year disposition in secure care (not to exceed his twenty-first birthday) is within the appropriate sentencing range for oral sexual battery – up to ten years with or without hard labor and without the benefit of probation, parole, or suspension of sentence. La.R.S. 14:43.3(C)(1). The State notes that if H.B. were an adult, the sentencing range would have been twenty-five to ninety-nine years. Considering the seriousness of this offense as well as the other offenses committed by H.B., the State argues that a lesser disposition would deprecate the seriousness of the offense and infringe upon the victim's right to justice. Therefore, we find no merit in H.B.'s assignment of error that the disposition for the oral sexual battery of T.J. was excessive.

H.B. also argues his trial counsel was counsel was ineffective for failing to object to the disposition imposed and for failure to file a motion to reconsider sentence. H.B. maintains his counsel was ineffective because of his recent appointment to the case, and cites the case of *State v. Forrester*, 21-140 (La.App. 3 Cir. 10/6/21), 329 So.3d 379, in support of this argument. In *Forrester*, the counsel that represented the defendant at sentencing openly admitted he knew nothing about the case. Finding Forrester received ineffective assistance of counsel, this court stated:

> Defendant thus was deprived of representation by counsel who knew the facts of his case and was capable of presenting mitigating factors during sentencing.
>
> In *State v. Harris*, 18-1012 (La. 7/9/20), 340 So.3d 845, the Louisiana Supreme Court held that counsel at sentencing could be ineffective for failing to investigate mitigating circumstances. The defendant in *Harris* contended his attorney was ineffective at sentencing because he failed to argue for a downward departure from a mandatory life sentence under the habitual offender statute. In agreeing with the defendant, the court stated:

25

An objectively reasonable standard of performance requires that counsel be aware of the sentencing options in the case and ensure that all reasonably available mitigating information and legal arguments are presented to the court. Since Louisiana law prohibits excessive sentences, and requires that individual circumstances be considered, counsel acts unprofessionally when he fails to conduct a reasonable investigation into factors which may warrant a downward departure from the mandatory minimum.

*Id.* at p. 19.

If counsel is ineffective for failing to investigate and present mitigating factors when the trial court has a mandatory sentence before it, there can be no question that Mr. Simms's performance at sentencing was ineffective. As this court has previously noted:

A claim of ineffective assistance of counsel is properly raised in a petition for post-conviction relief. *State v. Burkhalter,* 428 So.2d 449, 456 (La.1983) and *State v. Tolliver,* 464 So.2d 1088, 1090 (La.App. 1st Cir.1985). If development of evidence on the issue of insufficiency is warranted, the district court may order a full evidentiary hearing. *State v. Seiss,* 428 So.2d 444 (La.1983); *State v. Brown,* 384 So.2d 983 (La.1980); *State v. Deloch,* 380 So.2d 67 (La.1980). However, where the record contains evidence necessary to decide the issue, and the issue is raised on appeal by an assignment of error, the issue should be considered. *State v. Seiss,* supra; *State v. Burkhalter,* supra, and *State v. Tolliver,* supra.

*State v. Green*, 562 So.2d 35, 36-37 (La.App. 3 Cir. 1990) (footnote omitted).

In light of *Harris*, the record before this court is sufficient to determine Mr. Simms provided ineffective assistance of counsel when he represented Defendant at sentencing. There is no question Mr. Simms failed to investigate mitigating factors, as he openly stated he had no knowledge of the case; furthermore, he had to request a brief recess mid-hearing to determine if there were any letters in Defendant's file, as he had never looked at it before. Given the supreme court's statement in *Harris* that failing to investigate a possible downward departure is ineffective assistance, the complete failure to represent Defendant in the present case is worse. While the defendant in *Harris* was facing a mandatory life sentence, Defendant was facing anywhere from twenty-five years to ninety-nine years without benefits. After counsel who knew nothing about the case failed to present any mitigating factors that could have impacted Defendant's sentence, the trial court handed down a maximum sentence after finding Defendant was the worst kind of defendant, declaring him "evil" and "demented." Therefore, we must vacate Defendant's sentence and remand the matter for resentencing where Defendant is to be represented by counsel

familiar with the facts of the case and capable of rendering effective assistance.

*Id.* at 382-83.

The present case is distinguishable from *Forrester* in that H.B.'s trial counsel was not unfamiliar with the case. In fact, the disposition hearing was delayed in part to allow H.B.'s new counsel to become familiar with the case. At the beginning of the disposition hearing, H.B.'s counsel informed the trial court that he was appointed after the adjudication hearing, that he had the opportunity to review the State's entire file, and that he had met with H.B. and his mother, and felt he was "up to speed" on the case. Therefore, we find no merit to H.B.'s argument that his trial counsel was ineffective.

### *Failure to Transcribe Bench Conferences.*

In both appeals, H.B. argues that the trial court erred in failing to assure that discussions and arguments made during bench conferences were recorded and preserved for appellate review, thereby impinging upon his constitutional right to an appeal. Appellate counsel asserts that she was informed that two of the bench conferences pertained to the issue of whether H.B. was denied a fair hearing and the issue of effectiveness of his trial counsel. Appellate counsel further asserts that the record should be supplemented with the transcripts of the bench conferences, and she should be given an opportunity to submit a supplemental brief if necessary. On April 25, 2022, this court received a third supplemental record containing the transcript of the two bench conferences. H.B.'s counsel made no request to file an additional brief regarding the bench conferences. Accordingly, this assignment of error is abandoned.

### DECREE

For the foregoing reasons, the adjudication of the first degree rape of N.D. is reversed and set aside, with the sentence imposed on that charge vacated. We hereby

27

enter a verdict for the responsive charge of sexual battery and remand the matter for a new disposition hearing. Finding the trial court's judgment as to the two counts of sexual battery against N.B. is not clear, we remand the case for proper disposition of those two counts of sexual battery. All other adjudications and dispositions as to H.B. are affirmed. Upon remand, the trial court is directed at the new disposition hearing to inform H.B. of the correct provisions of La.Code Crim.P. art. 930.8.

**AFFIRMED IN PART; VACATED IN PART; RESPONSIVE VERDICT ENTERED; REMANDED FOR RESENTENCING.**